Good morning. We're ready to hear our first case today, Walter Nielsen v. Chuck Hagel. Mr. Sturgell? Good morning. May it please the Court, I'm Lowell Sturgell from the Department of Justice, representing the Secretary of Defense. It's familiar to all that a Title VII plaintiff must exhaust his or her administrative remedies prior to filing a Title VII suit in court. That includes bringing the matter to the attention of an EEO counselor and then, if that doesn't resolve the matter, filing timely appeals within the agency itself. It's also equally established, we believe, that a court lacks the authority to remand a case or to consider whether there were any errors committed by the agency in the administrative process. The remedy that the Title VII plaintiff has always is to bring a Title VII case in court on the substantive claims of discrimination that the person has. And in court, they're entitled to de novo review. Doesn't the government have an obligation as well, and that is to provide a final interview? The agency position in this case is that they did provide a final interview. They did that by e-mail. The plaintiffs dispute that. They say that it has to be an in-person interview. Well, is there anything that says it has to be, that it can be an e-mail interview? We believe there's nothing that says that it can't. Well, an interview, to me, the nature of an interview is a back-and-forth dialogue. How is that possible in an e-mail? That sounds more like some sort of notice. Well, in this context, it's undisputed that the alternative dispute resolution process never got off the ground. So there really... Whose fault was that? Well, the record doesn't go into whose fault it was. We believe that it was not the fault of the government. Some of it was the fault of the fact that it was stationed somewhere where it couldn't happen. But, again, the only thing... Did the government make an effort to initiate the dispute resolution process? I believe so, Your Honor, but, again, it doesn't really... How did they do that? I don't recall offhand. It's not really, actually, to be honest, relevant to the case because, again, our position is... Correct. So the answer is, I don't recall. Again, our position is that there is no right to an injunction or a remand in order to provide what allegedly was not provided originally. Mr. Sergio, let's say we disagree with you regarding whether a final interview was held and that we find the e-mail communication does not suffice as a matter of law. Why couldn't the Administrative Processes Act, Section 706, Paragraph 1, provide a basis for an action such as the one taken by the district court? Because it allows an order to compel agency action unlawfully withheld. So why wouldn't that fit the circumstances of this case if we disagree with you regarding whether the interview took place? So this Court addressed that very question in the Gioranto case, which is cited in our brief. Right, but that was a different case, wasn't it? Because wasn't that just regarding an investigative process? It wasn't a discrete agency action that was required by law. And this is a discrete agency action that's required by law. And to me, that's why that case doesn't help you. And you have the Supreme Court in the Norton case talking about the authority, don't you? It wants to compel discrete agency actions required by law. The reasoning of the Gioranto case was that in order to bring an APA suit, the plaintiff has to be challenging final agency action. And the reasoning of that case, again, was that errors in an agency's handling of an EEO complaint don't come. And what was the error in that case? Help us out here. Sure. That was a case where the EEOC was actually bringing the action against an employer, and the employer said that the EEOC erred because it had not properly made a reasonable cause determination. They hadn't given the employer notice and an opportunity to respond. So what this court held was the APA did not provide a suit in that case because there was no final agency action to be challenged. And the key point of that, the reasoning was, is that, again, in the Title VII context, the plaintiff's remedy is to bring a Title VII case in court for the substantive claims of discrimination that are at issue. The key point is they get de novo review in district court. That's all you get. What happens if we find that this was a discrete agency action that was unlawfully withheld? Aren't you stuck under Section 706 of the APA? No, because it still has to be final agency action under the APA. That's what Gioranto holds. It still has to be what? Final agency action. And this court in Gioranto said, for the same reasons we're arguing that this is not final agency action here or actionable under Title VII, that the agency's failure to do something in handle and complaint is not final agency action. It doesn't lead to anything other than the filing of a Title VII suit on the substantive grounds that issue. Let's go back. Yeah, I'm sorry. Let's go back to who's at fault in this case. There's an allegation in the record. Nielsen says that we're talking about whether he could comply with filing the response. He says that the counselor replied that he could submit his complaint as soon as he could. Isn't that a little bit misleading coming from the agency? You can do it when you can? Well, actually, that's part of what the individual said. You have to read the full part of what he said. First of all, the plaintiff called him on the day that the appeal was due, the very day. So he waited until the last day. He calls up somebody on the phone. He doesn't file a motion. He calls somebody. And what the person tells him is, look, I don't know whether you would be granted an extension or not. I can't promise that you would be or that you wouldn't be. The best thing you can do, if you want to, is just file it, and then maybe you'll be granted and maybe you won't. So then what he did then was wait 21 days after that to file. He'd been back at work. There's no showing that he couldn't have gone ahead and filed earlier, but he waited almost a whole month. So essentially you're saying that the government doesn't have to abide by the rules, but the complainant does. In other words, we don't have to give a final interview, assuming we disagree with you on that. We don't have to give a final interview, but you've got to walk the walk. You have to – we're not going to cut you any slack. It just – it doesn't quite ring true. That's the way the statute reads. That's the way – that's what the courts have held. That's what this court – this court did the same thing in the Schaaf case. It was an unpublished opinion, to be sure. Well, then don't cite it and don't rely on it. We're not arguing that it's finding precedent, but I can cite it for the reasoning in the opinion. And the district court's opinion is, which I can cite because it is published, is directly in support of our position here and adopts the reasoning that we have given you. And this court affirmed it in an unpublished opinion, which is not precedent. But the GeoRanter case, which I mentioned before. But, yeah, but GeoRanter was talking about you saying final agency action. Well, why isn't final agency action in this case the dismissal of the complaint? Because, again, that doesn't cause the plaintiff any actionable harm. All it does is set up a scenario in which the plaintiff can then file his titles or her Title VII suit for substantive claims of discrimination and get to no more review. That would be the case in any scenario, wouldn't it, having the right to sue? Under Title VII, that's right. Right, so whatever happens in the agency action prior to the filing of a Title VII suit, the plaintiff cannot challenge that. You're saying there are no rights that can be vindicated, but the APA does seem to disagree with you. I think the GeoRanter case is directly on point and for the reasons we've discussed. Right, but you haven't answered for me why the agency's dismissal of the complaint in this case isn't a final agency action for purposes of the GeoRanter case. Well, if you're all right, try it. Apparently it did not convince you. Well, I'm not sure. I mean, that's just confusing me. Right, so I think our answer is our answer. It's, you know, whether you ---- You stand on your answer. Right. Unequal tolling in this case. Would that be applicable? So may I say first, I think that on the 15-day notice issue, the plaintiff can't challenge that in district court either in terms of, you know, just saying that he was wrongly denied something. That would come into the case only as a response to the government's affirmative defense of lack of exhaustion. That's important in this case because if you look at the plaintiff's complaint, he only has two claims. The first claim is he didn't get his final interview. Second claim is the agency wrongly dismissed my claim because I really did, I should have been given equitable tolling and I should have, you know, made the 15-day rule. Well, both of those claims, they're not substantive claims of discrimination. They are claims that go to the agency process, which we contend that both of them are not actionable. So you really shouldn't even get to that. What's the triggering event for the 15-day clock? This is important, too, because the plaintiff says the triggering event is the giving of the final interview. But the regulation says that the triggering event is his receipt of the notice of the right to sue. And that's what the regulation says. It's cited in our brief. And it's uncontested that he did receive the notice and that if you look at the record, the notice that he received says that the 15-day rule time limit runs from the time of his receipt of the notice. And he conceded in district court in his opposition to summary. Doesn't the notice go hand in hand with the final interview? It may or may not, but it doesn't matter because the regulation says that the time period runs from the filing, the receipt of the notice. The counselor shall conduct a final interview and advise the agreed person in writing of his right to file within 15 days. Right. And then it says the notice shall inform the complainant of the right to file a discrimination complaint within 15 days of receipt of the notice. He shall conduct a final interview. So that's a question, right? Is he supposed to get a final interview or not? We say that's not actionable. Next question, when is his 15-day rule? And you say that's not actionable because it's a procedural matter. Is that what you're saying? Right. It's challenging. Again, it's the Seventh Circuit held this in Jordan v. Summers. And if you look at the Giuranta opinion, the Giuranta opinion does talk about the APA, and that's the context that we've been discussing that opinion. But earlier, it also talks about Title VII. And why is it, again, that equitable tolling doesn't apply when, first, the government did not provide him a final interview, and then, second, when he contacted whoever the government official was and they said, just file it whenever you get around to it? Why does equitable tolling not apply? And, third, when the resolution process never even took place? Sure. So, again, the key is what does he allege in his complaint? There are no claims of substantive discrimination. Right? Now, let's just say, let's hypothetically, let's say that some other person files a complaint and they have a substantive claim of discrimination. Then the government can come in and argue that the plaintiff didn't exhaust their administrative remedy because they missed the 15-day rule. At that point, he can say, well, the 15-day rule should have been told. And then you could consider that. That's not what happened in this case. The key is his complaint does not allege what he has to allege, a substantive claim of discrimination. But he does. But the district court found differently, didn't it? It did not. What the district court said was, look, I'm going to remand this. I'm going to give you a new chance. You're going to get a new. And this is important, too. The district court thought. It wasn't part of the district court's holding, but I thought the district court made a comment somewhere along the way that she thought that there was a substantive allegation. Did she not? No. So that's what they say. But what the record actually shows, it's a short transcript. You have it before you. And what the court said actually is, look, I'm going to remand this. But, look, it may not do you any good because the way I look at it, all of your claims except for one are barred because you failed to file them within 45 days. You failed to go to an EEO counselor within 45 days of when the events happened. So you're probably going to lose anyway. But if you want to go back, you know, go ahead and go back. So the court never said, oh, gee, you have one valid claim of discrimination on the complaint. What it said was it was a warning. This is at page 306 of the joint appendix. It says, now, Mr. Nielsen, I'm going to remand this. You get a new 15 days, which is wrong, right? He doesn't get a new 15 days from the date of filing. And that's important, too. We would ask the court to correct that so the district court knows that it's not from the date of filing. It's from the date of notice, as the regulation says. But it says most likely you will lose the war because almost one of your claims are clearly time barred. Okay. There will only be one claim that will not be time barred, and that's a difficult hurdle about his Hispanic heritage. The district court did say there will be one claim that will not be time barred. I don't think it's a fair reading of the district court's opinion to say that he had a substantive claim, discrimination in the complaint. Not that you have a valid claim, but that there is a substantive claim as opposed to a procedural complaint. I don't think that's fair either, Your Honor, to be honest. Again, I think what the court was saying is, look, whatever you've got, it's probably time barred. You know, I'm going to send this back. You can do what you want to do. You're probably going to lose. There's one claim that might not be. But when she's talking about the one claim that might not be, the time reference is what happens when he goes back to the agency. She's not commenting on what he's alleged in the complaint in this case. In his summary judgment briefing, he told the court, the basis of this case is my procedural claim. I mean, he thought that the only thing he could appeal or they could challenge was the lack of final interview and the fact that they didn't give him tolling on the 15 days. That's what he said. So I think that is what's binding on the court. And so I've sort of given you two things. I think the court, this is what erred in remanding this case. It didn't have authority to do that. It didn't understand when the 15-day notice runs, so that was wrong. And the third thing is the court dismissed the case without prejudice instead of with prejudice. And as we understand it, the court did that because, again, the court thought, you know, okay, well, I'm going to send this back. Now, there will be more proceedings, so I'm going to keep this case alive. And we think the court should go ahead. Well, she may have done it because she thought there was a substantive complaint alleged. Well, you'd think she would have said something like that if she had. Well, I mean, you know, that's a pretty obvious reason. If she thought that there was something substantive in play, there would be, she wouldn't want to prejudice his right to bring it back. Well, I think, you know, again, if you look at pages 305 and 306, we don't have a written opinion here. All we have is a transcript of what happened. And when you read this, so what she says is, okay, the plaintiff didn't get the Nth degree, didn't get his final interview. I'm going to remand it to let the plaintiff get his interview. And then right in the very next sentence, this is the carryover sentence from 305 to 306 of the joint appendix, she says he then gets a new 15-day time period to file his new complaint if the EEOC moves on from there. So she ties the two together, right, and that's the apparent reason why she remands. She never says anything to the extent that he said that he's got a substantive claim in his complaint. And if you look at the complaint, you can't find it. Your time has expired. Thank you, sir. Thank you. Ms. Farber. Good morning, Your Honors. My name is Mindy Farber, and I represent Mr. Nielsen. And I think it was fairly clear that I did not represent him in the lower proceedings. He was pro se at the time. My very esteemed opposing counsel, Mr. Sturgill, started off today by saying that my client, Mr. Nielsen, was just full of rampant procedural error. Counsel made a point that I really would like to expound on, and I think Your Honor picked it up as well. My client possibly, as a pro se person, did certain things that were out of sync that many people would not have done, but the agency made a lot of mistakes in this case that really were more significant because the agency knew better. It really did. This is a very long case. My client first started feeling discrimination around 2005. He didn't get any raises or promotions for about five years. He finally went and filed pro se. When he filed pro se, there were three procedural errors. He did not get alternative dispute resolution, and it is something that the agency provides. The agency typically will give you dates, and everybody exchanges dates, and then the agency will say which dates are best, and, you know, communications go back and forth. And finally, a date is picked, and everybody goes to alternative dispute resolution, and that's important because many of these cases do settle at that point, and that might have happened years ago. So are you saying that there was no alternative dispute resolution in this case because the government – I know there wasn't, but was it because the government didn't initiate that communication? The government did not initiate the communication, and it's the burden of the government to initiate it. Not a big burden, but just a burden to start exchanging dates and getting a mediator and getting everybody on the same page to get a date. And finally, when everybody gets a date, it's scheduled, and it's always up to the agency to do that. As a matter of fact, each agency, including Department of Defense, usually has a mediation coordinator who does that. What about the government's argument that the complaint here is merely about procedural irregularities, which there's no private right of action for? So he filed a pro se complaint that I know is one of those 85 type page complaints, but he really did spend a great part of it talking about discrimination because he was Latino. And he really may have emphasized the fact that he felt wronged by the fact that he didn't get his final interview and that he didn't get a chance for ADR, but he really did spend a lot of the complaint, maybe most of the complaint, talking about why he felt it was either direct discrimination or disparate impact. And I think Mr. Sturgill is incorrect in saying that the district court judge did not pick up on the fact that there was an actual substantive claim put in here because she did say, you know, a couple of your claims are time barred, enough of those, but there is one claim that is not time barred that you have a right to try to prevail on. She definitely gave her opinion that she didn't think it was a strong case. You know, a lot of these cases don't go on the merits anyway. They settle. And again, even a weak case could have settled if ADR had been offered. So there definitely was a comment, and I don't think it was nebulous at all, that said you have one claim that isn't time barred and that claim is something that you should be allowed to pursue. It really is essential to have that final interview. Those final interviews are not e-mails. Those final interviews often are one-hour in-person or telephone exchanges, and Your Honor is correct that it allows for a back-and-forth, back-and-forth, where particularly a pro se plaintiff can ask questions and understand the procedure. He could have brought up the fact that he didn't get ADR, and he also would have been able to point out that he was not really sure about the strictness of the 15-day period of time for filing a formal complaint, and that could have been emphasized to him. So that exit interview, that final interview was really important, and it is clear that the agency must give the final interview. I've never seen an agency not give a final interview, and then the 15 days ticks after the final interview. So when Mr. Sturgill says he did not file anything within the 15 days, it somewhat begs the question that when do the 15 days start running? If he didn't get the final interview, then he never had the 15 days start. So it was kind of out there. So there was no point of time in which to say this is day one of the 15 days because the final interview should have started that clock running, ticking. Okay. Then, Ms. Farber, let's say this Court were to agree with you, and you're writing the opinion of the Court, okay? We're switching places here. How would you write it? What substantive law is there that gives the district court the authority to remand a Title VII case in circumstances such as this without making a substantive determination at all on the merits of the case? What law would you rely on in writing the opinion? I understand it's not fair. I agree with you completely. But what is the law in writing the opinion that you would rely on? I mean, she could have easily have sent it back and said a number of things. I'm asking you what law would you be relying on if you were the author of the opinion in your favor? I would have relied on Title VII. Okay. What part? I would have relied on Title VII in that there was a substantive claim that he was not allowed to exercise and that it was going to be remanded, not just procedurally, but give him his right to get his basic. What in Title VII allows the district court to send back a case for procedural irregularities without addressing any of the substance of the case? She did not address substantively the Title VII case, but she did say there is a Title VII claim here. There is a Title VII claim here. Again, for the law, you're writing the opinion, and I haven't heard yet you point to me to any section, any particular case law that will assist your outcome. I see what you're saying. I mean, I guess what my emphasis is is that she could have easily have sent it back and just said I'm going to dismiss it without prejudice to add counts to clarify your complaint. That could have been done without any problem, and I think the fact is that she basically said there really is we really have to go back because there really is nothing that he was allowed to exercise below that would have he never had a chance to have his Title VII claim exercised fairly. Yes. So you're really asking us to invoke general principles. And equitable arguments. Apart from any particular discrete provision of law. But I think it is very important because this was a case where, no court is obligated to bend over incredibly backwards because someone is pro se, although there are many economic reasons why people are pro se. But in this case, given that there were three distinct areas where a heavily financed Department of Defense had every opportunity to counsel him wisely and never did, and he relied on a government agency to give him the advice that it was obligated to give to him and it was all done poorly, I think that there really was an equitable obligation here to send it back. It was so riddled with terrible defects. This is up here on a writ of mandamus. Would you say this is an extraordinary situation that would warrant a writ of mandamus? It was an extraordinary situation for a person who wished to bring a Title VII claim and had no opportunity to do so. Decide in this case not on the basis of whether your guy is a nice guy or not. The question is legally, is it an extraordinary situation? I believe it was. I believe it was an extraordinary situation in terms of Title VII blundering. He never had a right to exercise from one moment his ability to challenge the fact that he was denied promotion after promotion, raise after raise. He, from the very first moment that he started in the administrative process, never had a chance. And it wasn't because of his blundering. It was because of the agency's blundering. And I think this was an extraordinary circumstance. I have never myself encountered a case where there were three major blunders by one agency with one individual. And so there really was nothing left for him to do but go into his administrative appeals. He exhausted EEOC. He exhausted DOD. He had to go into court or he could have just given up, I suppose. And going into the court, I think the right thing to do was on an equitable grounds to remand it because there never was a chance for him to exercise Title VII rights where he should have been able to within the government level. Anything further? No. I just ask, you know, I do want to point out one thing. And this would be very, very brief. The agency actually filed a motion as, you know, for summary judgment. And actually, in a sense, it got what it wanted. The complaint was dismissed. And the complaint was dismissed, but it was just sent back for administrative procedure. It was not a hardship on the government because what would have happened had it been sent back and this appeal had not been taken to this court was simply he would have finally gotten his one hour or less final interview. He would have then been given his right to ADR. It might have settled in ADR, which the government probably would have been very pleased about. If it hadn't settled in ADR, somehow it didn't get there, he would have then filed his claim. And the government at that time, and as you can see, the judge thought this might not be the strongest claim in the world. The government at that point could have renewed its motion for summary judgment on the administrative level and won. So we're not talking about much on the part of the government that would have taken place that the government could not have easily done had it been sent back. And yet for the plaintiff, the consequences were so serious that I think there was nothing that the judge unfairly did but send it back to give him his opportunity for review. Thank you. Okay. Thank you very much. Mr. Sturgill, I believe you used all your time. Well, I have three. Oh, he has three. Okay. I'm sorry. I apologize. I saw that red light and I thought you'd used it. I'll try to be short, I guess. First, I'd like to, on the question of when the notice runs, the 15-day notice, the regulation, if I could give it to you, is 29 CFR 1614.106. And what it says, paragraph B, a complaint must be filed within 15 days of receipt of the notice of the right to sue. So really the regulation tells you what the answer is on that. Second, in terms of mandamus, our answer would be that mandamus is not available in a situation where there is no right to relief in the course of hell that a court, that a plaintiff can't even sue for procedural irregularities. So that would be our answer to that. And third, in terms of what the complaint alleges, I would just, all I can do is look at the complaint. And the complaint's in the very first part of the joint appendix. Page 3 of the joint appendix is the first page of the complaint. He says, a final interview was never conducted by my EEO counselor. This procedural misstep prevented the 15-day countdown clock from ever running. That's his claim. And then if you go to page 5 of the, I'm sorry, page 7 of the complaint, I assume the court will only address the EEOC procedural technicality dismissal of my complaint, due to filing it after the 15-day rule. That's what he thinks is going to happen. And then when he filed his response to summary judgment, he told the court the same thing. And he says, I assume that the court will only address the 15-day and not the actual formal complaint or the appeal. And you skipped over the two pages where he talks about his, what he calls his pertinent backstory, being Hispanic and then his discussion of Hispanics within the DOD workforce. And I think the complaint ends with him having sought help for suspected discrimination. So there is, in this pro se complaint, there could be found a substantive complaint. So I think the part I skipped over, when he says a part of the complaint or the appeal, he's talking about the complaint and the appeal in the administrative process. So he says again, he assumes that the district court will not be able to address the claims he made before the agency, which he did make claims before the agency. He didn't make them here. Now, it's correct that he attached to his complaint the materials that he submitted before the agency. And that does go into his, right, his substantive claim. He did do that. So the question is, did he, by just attaching materials from the agency, do enough to actually assert a substantive claim of discrimination? That's the question. And we think the answer is no. And that he actually, if anything, disavowed it consistently and several times. Okay. Thank you. Thank you very much. Thank both counsel for their advocacy. We will come down and greet counsel before proceeding to the next case.
judges: Barbara Milano Keenan, Henry F. Floyd, Stephanie D. Thacker